

# COURT OF APPEALS
## EIGHTH DISTRICT OF TEXAS
### EL PASO, TEXAS

| | | |
|---|---|---|
| JUAN ARELLANO, | § | No. 08-18-00097-CR |
| Appellant, | § | Appeal from |
| v. | § | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20150D05071) |

**O P I N I O N**

A jury convicted Appellant, Juan Arellano, of possession of more than 50 but less than 2,000 pounds of marijuana, and the trial court accepted an agreed upon sentence by the parties of 8 years' probation. Appellant raises nine issues on appeal, raising these complaints: (1) the trial court violated his federal constitutional due process right to present a defense by sustaining an objection to the form of a question as leading; (2-4) the trial court erred by admitting Department of Homeland Security records showing his border crossing history; (5) denial of a motion for a mistrial based upon the prosecutor's argument; (6) the evidence was insufficient to support his conviction; and (7-9) he was denied the effective assistance of trial counsel because counsel did not strike a juror or object to certain testimony. Because we conclude that the issues do not warrant relief, we affirm the trial court's judgment.

1

# I. BACKGROUND

In October 2015, a grand jury indicted Appellant for possession of more than 50 but less than 2,000 pounds of marijuana; trial commenced in March 2018. The evidence was not disputed that in September 2015, Sheriff's Deputy Hilario Calanche initiated a traffic stop because the Jeep Appellant owned and was driving had a malfunctioning turn signal. During a search incident to the traffic stop, law enforcement ultimately discovered 82 pounds of fresh marijuana vacuum packaged in bricks concealed within Appellant's Jeep. Seventeen wrapped bricks of marijuana were found inside a rubber tube that was itself concealed within the spare tire, and mechanics later retrieved fifty-seven packages of marijuana hidden inside the gas tank.

Also not in dispute is that during the traffic stop Appellant provided a false El Paso address when Deputy Calanche asked where he lived. At the time, Appellant lived in Juarez, Mexico. Eduardo Vasquez Devora was a passenger in the Jeep with Appellant at the time. Deputy Calanche's bodycam video, which was played for the jury, shows that Appellant and Devora provided inconsistent stories to law enforcement concerning how long they had known each other and where they were going.

Deputy Calanche requested a K-9 search of Appellant's Jeep based upon Appellant's behavior and the inconsistent stories that Appellant and Devora provided. Based upon an alert by the K-9 dog, Deputy Calanche cut into the spare tire and retrieved vacuum packages of dark green marijuana, which meant the product was still fresh. When the Jeep was towed to the police motor pool, additional packages of marijuana were found in the gas tank. Detective Benjamin Perales interviewed Appellant and Devora on the day that Appellant was arrested. Appellant told him during the interview that he picked up Devora on the bridge that day, and that both Appellant and Devora denied knowing that marijuana was in the Jeep.

2

Appellant's defense at trial was that he was "fighting the cartel" who set him up and he was "fighting the State of Texas" who was trying to convict him. Appellant's wife, Maria Jesus Aguilar Perez, testified that Appellant drove the Jeep for a man she knew as "Adrian," who instructed Appellant to provide the false United States address to law enforcement if he was ever questioned. Appellant testified that a "person named Adrian" kept the Jeep in a warehouse in Juarez and periodically asked him to drive it from Mexico into the United States. He stated that Devora previously gave him the Jeep in El Paso, having registered the vehicle in Appellant's name to a false United States address. Appellant testified that, on the day he was arrested, Adrian asked him to drive the Jeep from Juarez into El Paso and pick up a car that Adrian had purchased. Appellant met Devora at a Whataburger as instructed, and they were following another car that Devora told Appellant to follow when Deputy Calanche initiated the traffic stop.

Appellant and his wife offered testimony about their residence and frequency of border crossings. In rebuttal, the State called an Immigration and Customs Enforcement officer who introduced Appellant's Department of Homeland Security border crossing history. The State also re-called Detective Perales, who testified that Appellant never said during his initial interview that he drove the Jeep for a man named "Adrian," or that Devora registered the Jeep in Appellant's name. Appellant also did not inform Detective Perales that he retrieved the Jeep from a warehouse before he crossed into the United States on the day he was arrested, and Appellant did not explain what he was doing with the Jeep or why he was with Devora on the day of his arrest.

Following his conviction, Appellant brings nine issues for our review.

## II. LEADING QUESTION

Appellant first argues that the trial court violated his federal constitutional due process rights to testify and present a defense when it sustained a "leading" objection to the following

3

question his counsel asked him on direct examination: "Did you have any knowledge that the drugs were in that vehicle?" Appellant maintains that the trial court's ruling prohibited him from presenting his lone defense of lack of knowledge of marijuana in the Jeep. He specifically contends that the ruling prevented him from confronting and defending against Sergeant Edgar Soto's testimony that anyone who put gasoline into the vehicle would notice the large quantity of marijuana concealed within the gas tank.

While the State asserts that the issue fails on the merits, it first argues that Appellant did not comply with TEX.R.EVID. 103 by objecting to the trial court's ruling or making a proffer of the excluded evidence.[1] We conclude that the issue is procedurally defaulted because Appellant did not preserve his constitutional complaints by presenting them to the trial court.

**A. Trial Proceedings**

Trial counsel argued during his opening statement that Appellant was fighting a cartel that set him up, and that Appellant had no knowledge of the marijuana in the Jeep. Detective Perales thereafter testified that Appellant told him he "had no knowledge that his Jeep had marijuana." Sergeant Soto, however, testified that it would be hard for anyone putting gas into the Jeep not to realize that the majority of the vehicle's gas tank was occupied by the 57 packages of marijuana concealed within it.

---

[1] Texas Rule of Evidence 103(a) provides:

  (a)  Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
    . . .
    (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

TEX.R.EVID. 103(a)(2).

Appellant testified on direct examination that he was not guilty and was a "victim of other people." Trial counsel thereafter asked Appellant, "Did you have any knowledge that the drugs were in that vehicle?" The State objected that the question was leading and improperly raised the affirmative defense of duress. The trial court rejected the duress ground but sustained the leading objection.

Thereafter, Appellant testified that Devora gave him the Jeep with a registration titled in Appellant's name, and law enforcement searched the vehicle twice without incident when he previously drove it from Juarez into El Paso. Appellant also testified that the "people that had the vehicle" gave him $15 or $20 to put gas into the Jeep on these two trips, but he did not put gas into the Jeep on the day that he was arrested. Appellant detailed that Adrian drove him to a warehouse in Juarez that day, where he picked up the Jeep, crossed into the United States, and met Devora. Appellant also told the jury that he informed Detective Perales that the "vehicle was given to [him] by Mr. Vasquez. That it was not [his]. And that [he] had no idea it had drugs in the tank and all that happened."

During cross-examination, Appellant again testified that he never purchased the Jeep and the Jeep was never in his possession. He stated that, on the day of his arrest, he told both Deputy Alfredo Tellez and a second officer that the Jeep was not his vehicle.

Because Appellant presents this issue as one of a denial of his constitutional right to present his defense, and not as an abuse of discretion in making an evidentiary ruling, we first turn to the question of error preservation.

## B. Controlling Law

The Court of Criminal Appeals has held that an accused must clearly articulate to the trial court the constitutional basis supporting the admission of excluded evidence to preserve a

5

constitutional claim for appeal. *Golliday v. State*, 560 S.W.3d 664, 669 (Tex.Crim.App. 2018); *Reyna v. State*, 168 S.W.3d 173, 177 (Tex.Crim.App. 2005). In *Golliday v. State*, the accused argued on direct appeal that the trial court's rulings limiting his cross-examination of witnesses violated his constitutional due process and confrontation rights. *See Golliday*, 560 S.W.3d at 667. But the accused had only argued hearsay and relevance grounds during his offer of proof, and did not cite to any constitutional provisions when counsel argued for admitting the evidence to the trial court. *See id.* at 670. The Court of Criminal Appeals reversed the lower court's finding that the trial court violated the accused's rights, noting that (1) preserving error under Texas Rule of Appellate Procedure 33.1 is entirely separate from making an offer of proof under Texas Rule of Evidence 103, and (2) "in order to preserve an argument that the exclusion of defensive evidence violates constitutional principles, a defendant must state the grounds for the ruling that he seeks with sufficient specificity to make the trial court aware of these grounds." *See id.* at 668-671.

The *Golliday* court agreed that although hyper-technical words are not required to preserve error, the complaining party must still "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Id.* at 670, *quoting Clark v. State*, 365 S.W.3d 333, 339 (Tex.Crim.App. 2012). Parties are not permitted to "bootstrap a constitutional issue from the most innocuous trial objection," and the trial court must be afforded the chance to rule on the "specific constitutional basis for admission because it can have such heavy implications on appeal." *Id.*, *quoting Clark*, 365 S.W.3d at 340. The court held that general arguments about hearsay, that proffered evidence is relevant, or that the jury "needed to get the whole picture of the situation," do not put the trial court on notice that an accused is raising a constitutional argument. *See id.*

6

**C. Application**

As in *Golliday*, Appellant did not preserve the constitutional claim now before this Court. *See* 560 S.W.3d at 671; TEX.R.APP.P. 33.1. Trial counsel offered the court no response when the State objected to the question as leading. Counsel did not cite to any constitutional provisions or put the trial court on notice that Appellant was asserting a constitutional basis supporting the admission of the testimony. *See Golliday*, 560 S.W.3d at 671. After the trial court sustained the State's objection, counsel immediately continued with Appellant's direct examination. In sum, counsel did not communicate to the trial court, at any point in time when the court was in a position to address the issue, that its ruling violated Appellant's constitutional rights to due process, confrontation, and to present a defense. The trial court was never made aware that Appellant objected to the ruling for any reason, much less that Appellant's objections were of constitutional magnitude.[2]

Appellant did not provide the trial court with the opportunity to rule on the constitutional violations presented on appeal. We thus overrule Issue One as procedurally defaulted.

## III. BORDER CROSSING HISTORY

Appellant's second, third, and fourth issues allege that the trial court erred by admitting his border crossing history maintained by the Department of Homeland Security. Specifically, he argues that the trial court violated his federal constitutional confrontation rights, the evidence was unfairly prejudicial under Texas Rule of Evidence 403, and the State did not lay a proper predicate

---

[2] Even were we to reach the merits, we would have serious concerns with whether the claimed error was harmful. Because the trial court did not sustain the State's objection to the substance of the question, counsel was free to rephrase the question and present the evidence to the jury. Trial Counsel did just this, and Appellant later testified that he was truthful when he told Detective Perales that he did not own the Jeep and he had no knowledge that marijuana was concealed within the vehicle. Indeed, Appellant testified that the Jeep was stored in a warehouse, he put gasoline in it without problem, and law enforcement searched the vehicle twice without incident when he crossed from Juarez into El Paso.

7

to admit the document. The State responds that these issues are procedurally defaulted because Appellant did not raise them in the trial court, and we agree.

## A. Trial Proceedings

Appellant's wife testified that at the time of Appellant's arrest, the couple had been living in Juarez, Mexico, for five months. On cross-examination, she claimed to have lived in Sonora and Sinaloa Mexico. She indicated that Appellant stayed at her parents' home in Sinaloa for a "short" period of time, and he lived in Guanajuato, Mexico before that. She also testified that Appellant lived in Tennessee for 10 to 12 years. Appellant testified that he crossed into El Paso three or four times while he lived in Juarez. Appellant indicated that, while he was living in Sonora, Mexico, he crossed into Nogales, Arizona, on several occasions to look for employment.

In its rebuttal, the State called Immigrations and Customs Enforcement Deportation Officer Adrian Esparza, who testified that his job duties included looking up United States border crossing histories on subjects. Officer Esparza testified that he retrieved the border crossing history of Appellant. When the State moved to introduce Appellant's border crossing history maintained by the Department of Homeland Security, the following exchange occurred:

| | |
|---|---|
| [Trial Counsel]: | Judge, I'm going to object on the grounds that it's a business record. And the business record requires 30-day advance filing. |
| [Trial Court]: | You're not offering it as a business record, are you? |
| [The State]: | No, Your Honor. I'm offering it as a documentation of what this witness would have investigated. And I believe that the 30-day requirement for business records would be if we were trying to make it self-authenticating. But we have a sponsoring witness here. |
| [Trial Court]: | All right. Do you have any other objections, [counsel]? |
| [Trial Counsel]: | Well, Your Honor, the fact that it's not sealed. It's not authenticated by the custodian of records. And I'm not sure |

if--if it's not authenticated by the custodian of records, that it's admissible, Judge.  He's not the custodian of records.

[Trial Court]:          All right.  You can ask additional questions.

The State asked some additional questions to respond to those objections and then re-offered the exhibit.  Appellant's counsel then stated, "I'm still going to stay with the same objections, Your Honor."  The trial court admitted the records.

Officer Esparza thereafter testified without objection that Appellant's border crossing history indicated that: (1) between September 2014, and April 2015, Appellant crossed 21 times in Nogales, Arizona; (2) in August 2015, Appellant crossed at the downtown bridge in El Paso three times, twice on foot, and once by vehicle; and (3) in September 2015, Appellant crossed El Paso bridges four times in a vehicle, all with the same license plate number as that on the Jeep.

**B.  No Violation of Federal Constitutional Confrontation Rights**

Appellant argues in his second issue that the trial court violated his federal constitutional confrontation rights when it admitted the border crossing history exhibit, because the document contained testimonial statements.  The State responds that Appellant procedurally defaulted the issue, because he did not raise a constitutional objection in the trial court.  We agree.

The Sixth Amendment's Confrontation Clause grants the accused in criminal prosecutions "the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  The Confrontation Clause prohibits the testimonial statements of a witness absent from trial unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him.  *See Crawford v. Washington*, 541 U.S. 36, 59 (2004).  But an accused fails to preserve a complaint that the trial court violated confrontation rights by not alerting the trial court to the constitutional complaint. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex.Crim.App. 2004), *citing* TEX.R.APP.P. 33.1.  In *Paredes*, the accused complained on direct appeal that trial court violated his

9

confrontation rights when it permitted a State witness to testify about statements that a co-defendant made. *Id.* The Court of Criminal Appeals determined that the constitutional complaints were not preserved, however, because only hearsay objections had been urged at trial. *Id.*

As in *Paredes*, Appellant has not preserved his confrontation claim on appeal because he did not raise a constitutional objection to the evidence in the trial court. *See id.*; TEX.R.APP.P. 33.1. When the State attempted to introduce the exhibit, trial counsel raised only hearsay objections. Appellant's objections did not preserve his Sixth Amendment complaint that he was denied his right to confront and cross-examine the author of the border crossing history. *See Darcy v. State*, 488 S.W.3d 325, 329 (Tex.Crim.App. 2016) (indicating that errors in the admission of evidence are generally subject to procedural default, regardless of the constitutional right involved).

Because Appellant did not alert the trial court to the constitutional objection he raises on appeal, we overrule Issue Two as procedurally defaulted.

### C. No Error Concerning Evidentiary Claims

Appellant argues in his third and fourth issues that the trial court erred by admitting the border crossing history because the evidence should have been excluded under the Texas Rules of Evidence. Specifically, Appellant alleges that the border crossing history was more prejudicial than probative under Rule 403. He also maintains that the State did not lay the proper predicate for admission by establishing that the record was (1) made at or near the time by, or from information transmitted by someone with knowledge; (2) kept in the course of a regularly conducted business activity; or that (3) making the border crossing history was a regular practice of the Department of Homeland Security. The State correctly responds that the issues are not preserved for appellate review because Appellant did not raise these objections at trial. As the

Court of Criminal Appeals has indicated, evidentiary rules render evidence objectionable, not inadmissible, and appellate complaints concerning the admissibility of evidence are lost if a party does not object at a time when the trial court can address the issue. *See Rivas v. State*, 275 S.W.3d 880, 881 (Tex.Crim.App. 2009); TEX.R.APP.P. 33.1; TEX.R.EVID. 103.

Counsel objected at trial that the State did not provide 30 days' advance filing notice for a business record, and the document was not sealed or authenticated. Counsel thereafter did not object while Officer Esparza referenced the border crossing history during the next five pages of trial transcript. As such, Appellant did not preserve the alleged errors for these issues on appeal.[3] *See Reyna v. State*, 168 S.W.3d 173, 179-80 (Tex.Crim.App. 2005) (concluding that the court of appeals erred in reversing appellant's conviction on a ground that the trial court did not have the opportunity to rule upon).

We therefore overrule Issues Three and Four as procedurally defaulted.

## IV. IMPROPER JURY ARGUMENT

Appellant's fifth issue contends that the trial court erred by not granting a mistrial when the prosecutor argued, "the defendant knows what he's doing. He's gotten away with it throughout his entire life." The State responds that the trial court did not abuse its discretion by denying Appellant's motion for a mistrial, given the strength of the prosecution's case and the curative instruction to the statement. We agree.

---

[3] Appellant makes a fleeting reference in a concluding sentence of his opening brief that the border crossing history exhibit was not relevant under Texas Rule of Evidence 402. He does not, however, discuss or cite to any case law to support this single reference to Rules of Evidence 402. *See* TEX.R.APP.P. 38.1 (requiring brief to apply the law to the facts of the case). And in any event, Appellant did not object to the exhibit on relevance grounds.

## A. Trial Proceedings

During closing, Appellant's trial counsel argued that Appellant was "a man of integrity. He is a man who works. Who's worked all his life." Counsel urged that Appellant "doesn't know too much about rights" but knows "what's true and what's honorable to do." He maintained that Appellant moved from state to state working in agricultural fields, and that life was a "huge struggle" to "put some food on the table" and "[c]lothes on his kids." Counsel thereafter argued a second time that Appellant had worked all of his life:

> My client is a humble man. He's a little man. He couldn't have come here, bought a car, done all these things--all that packaging by himself. And he's not the kind of person that would do that. I mean, he's a hard worker. He uses his hands. He bends his back to pick up those mushrooms to work at that factory where they make sausage and all that stuff. All his life he's done it.

During rebuttal, the State argued that the jury could infer that Appellant knew drugs were concealed within the Jeep because Appellant provided Deputy Calanche with a false address, he testified inconsistently about when and where he previously lived, and law enforcement retrieved over 82 pounds of marijuana from Appellant's vehicle. The prosecutor stated, "[w]e have a value of not just like chump change $20, $30. This is over $56,000. The defendant knows what he's doing. He's gotten away with it his entire life."

Appellant's trial counsel objected, and the following exchange occurred:

[Trial Counsel]: Objection, Your Honor. That implies--and I'm calling for a mistrial asking the court to strike those comments because he's saying that my client has done this all his life. There's no proof of that. That's inflammatory and that's just wrong, Judge.

[Trial Court]: All right. I will ask you, ladies and gentlemen, to disregard what [the prosecutor] said because there is no proof that the defendant has any prior criminal history or that he's ever been involved in this type of case.

12

> I will deny your request for a mistrial. Go ahead, [State].

The State then argued that the factfinder could infer Appellant's knowledge from his admission that he freely took a Jeep and followed instructions to drive the vehicle to various locations.

### B. Controlling Law

Because the trial court, in effect, sustained Appellant's objection and instructed the jury to disregard the prosecutor's argument, the only adverse ruling, and only ruling ripe for appellate review, is the trial court's denial of the motion for mistrial. *See Archie v. State*, 340 S.W.3d 734, 738 (Tex.Crim.App. 2011); *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex.Crim.App. 2004) (en banc). Mistrials are appropriate only in "extreme circumstances" for a "narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex.Crim.App. 2009). A trial court's denial of a mistrial is reviewed for abuse of discretion. *See id.* A reviewing court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the trial court at the time of its ruling. *See id.* The ruling must be upheld if it was in the zone of reasonable disagreement. *See id.*

To evaluate whether a trial court abused its discretion in denying a mistrial for improper jury argument, the Court of Criminal Appeals adopted a three factor test from *Mosely v. State*, which balances: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; (3) the certainty of the conviction absent the conduct. *See Archie*, 340 S.W.3d at 739, *citing Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App. 1998) (en banc). A mistrial is appropriate only when improper jury argument is so inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *See Archie*, 340 S.W.3d at 739, *quoting Young v. State*, 137 S.W.3d 65, 71 (Tex.Crim.App. 2004) (en banc).

13

A reviewing court presumes that the jury followed the trial court's instructions. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex.Crim.App. 2005). An appellant may rebut this presumption by pointing to evidence in the record indicating that the jury did not follow the trial court's instructions. *See id.*

Proper jury argument is limited to four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to an argument of opposing counsel; and (4) pleas for law enforcement. *See Milton v. State*, 572 S.W.3d 234, 239 (Tex.Crim.App. 2019). Error may occur when argument falls outside these areas; however, an instruction to disregard the argument generally cures the error. *See Dinkins v. State*, 894 S.W.2d 330, 357 (Tex.Crim.App. 1995) (en banc).

### C. Analysis

#### 1. Factor one: the severity of the misconduct was not so great

We conclude that the severity of the misconduct was not great, because the prosecutor's argument was at least directed towards two of four permissible areas for argument: an answer to opposing counsel's argument, and a reasonable deduction from the evidence. *See Milton*, 572 S.W.3d at 239. Appellant's trial counsel argued more than once that Appellant had worked with integrity and honor "all of his life." Based upon trial counsel's argument, the prosecutor would be expected to try and rebut that claim. In doing so, the State's counsel resorted to a bit of hyperbole--suggesting that Appellant had gotten away with "his entire life." But the argument was at least directed at Appellant's reciprocal and opposite claim. Moreover, the prosecutor's suggestion--setting aside the hyperbole--had some basis in the evidence. The prosecutor could have asked the jury to deduce other instances of drug running from the other instances of border crossings,

14

particularly given Appellant's inaccurate statements to law enforcement about the number of times he crossed the border, [4] where he lived and worked,[5] and circumstances of his acquiring the Jeep.[6]

### 2. Factor two: the effect of curative instructions

Under the second *Mosely* factor, the reviewing court considers the measures utilized to cure the misconduct. *See Archie*, 340 S.W.3d at 741. Viewing the evidence in the light most favorable to the trial court's ruling, this factor also does not demonstrate that the trial court abused its discretion. *Ocon*, 284 S.W.3d at 884. Even if the prosecutor's argument ran afoul of a permissible area, the trial court immediately provided a curative instruction to mitigate any potential error. *See Dinkins*, 894 S.W.2d at 357. After trial counsel objected, the trial court instructed the jury to disregard the statement. The trial court also indicated that the State presented "no proof that the defendant has any prior criminal history" or that Appellant had "ever been involved in this type of case." The State thereafter made no comments regarding Appellant's past activities. *See id.* (holding harmless any error in prosecutor's argument that defense counsel intended to mislead the jury, because the trial court provided a curative instruction and the State made no further comment impugning counsel's veracity).

---

[4] Appellant, for instance, provided inaccurate testimony concerning how many times he crossed from Mexico into the United States. Appellant testified that, when he lived in Sonora, he crossed into Nogales, Arizona "several times" to go "to the store" to "look[] for a job. That's all." Appellant's Department of Homeland Security border crossing history, however, indicated that he crossed into Nogales 21 times between September 2014 and April 2015.

[5] Appellant admitted that he was not truthful when he told Deputy Calanche that he lived in El Paso at the time he was arrested, when he actually lived in Juarez, Mexico. He told Deputy Calanche that he lost his United States driver's license in Tennessee, but Appellant was not a resident of the United States.

[6] Appellant admitted that he was not truthful when he told Deputy Calanche that he purchased the Jeep in Juarez a month prior to his arrest, and he was not truthful when he stated that he knew Devora for many years. The gravamen of Appellant's argument concerning this issue is that the prosecutor improperly emphasized Appellant's Department of Homeland Security border crossing history to argue that Appellant previously crossed into the United States to engage in criminal activity similar to what he was being prosecuted for. The State, however, did not introduce the allegation that Appellant worked for a cartel. Rather, Appellant introduced evidence that he drove the Jeep for a cartel as part of his defense; evidence the trial court admitted over the State's objection. The State thereafter introduced Appellant's Department of Homeland Security border crossing history on rebuttal.

15

In response to two other objections raised in closing argument, the trial court provided other instructions that would generally diminish the influence of the prosecutor's statements. The trial court also instructed the jury that "you are the people that determine what the evidence is. What you recall between the 12 of you is what it is. The attorneys are just arguing their side. What they say and their arguments are not evidence." The court thereafter instructed, "I'll remind you again that this is argument. What the attorneys are saying is not evidence. The evidence is what was testified to in front of the 12 of you and what you remember it to be." As an additional safeguard, before the jury retired for deliberations, the trial court instructed that "the only evidence that you can base your decision on is what's been introduced into evidence and what came from the witness stand."

Appellant does not allege that the jury did not follow these instructions as it pertains to this issue. Accordingly, he has not rebutted the presumption that the jury followed the trial court's instructions to only consider admitted evidence during deliberations. *See Thrift*, 176 S.W.3d at 224. As such, Appellant has not shown, pursuant to *Archie v. State*, that a curative instruction would not likely prevent the jury from being unfairly prejudiced against the him. *See Archie*, 340 S.W.3d at 739.

### 3. Factor three: strength of the evidence of guilt

Concerning the final *Mosely* factor, the certainty of Appellant's conviction did not rest in the prosecutor's argument. *See Archie*, 340 S.W.3d at 741. The State's evidence focused on the September 10, 2015 incident for which Appellant was prosecuted. The State presented evidence that, on September 10, 2015, Appellant drove a Jeep that he owned that concealed 74 bricks of marijuana. Appellant knew that the Jeep was titled in his name to a false United States address, and he provided that address and inaccurate information to law enforcement when he was asked.

16

As we note here, and in more detail in the next issue, the evidence that the State presented during Appellant's trial was strong enough that the jury would have returned a guilty verdict absent the prosecutor's statement. *See Archie*, 340 S.W.3d at 739.

Viewing the evidence in the light most favorable to the trial court's ruling, the situation did not rise to the level of an "extreme circumstance" as to render the trial court's denial of a mistrial outside the zone of reasonable disagreement. *See Ocon*, 284 S.W.3d at 884. As such, we overrule the Issue Five.

## V. SUFFICIENCY OF EVIDENCE TO SUPPORT THE CONVICTION

In his sixth issue, Appellant argues that the evidence was insufficient to support his conviction. The argument focuses on whether the State proved that Appellant knew that marijuana was hidden inside the vehicle.

### A. Controlling Law

#### 1. The Jackson analysis

The Fourteenth Amendment guarantee of due process requires that every conviction must be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). In a legal sufficiency challenge, we focus solely on whether the evidence, when viewed in the light most favorable to the verdict, would permit *any* rational jury to find the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 912 (establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

Applying that standard, we recognize that our system designates the jury as the sole arbiter of the credibility and the weight attached to the testimony of each witness. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex.Crim.App. 2020); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App.

17

2014). Only the jury acts "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319. In doing so, the jury may choose to believe or disbelieve that testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008). The jury remains at liberty to believe "all, some, or none of a witness's testimony." *Metcalf*, 597 S.W.3d at 855. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319.

We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). However, "[w]e are not to sit as a thirteenth juror reweighing the evidence or deciding whether we believe the evidence established the element in contention beyond a reasonable doubt[.]" *Blankenship v. State*, 780 S.W.2d 198, 207 (Tex.Crim.App. 1988) (en banc). Instead, "we test the evidence to see if it is at least conclusive enough for a reasonable factfinder to believe based on the evidence that the element is established beyond a reasonable doubt." *Id.*, *citing Jackson*, 443 U.S. at 318.

### 2. Possession of a controlled substance

To support a conviction for possession of a controlled substance, the State must prove that the accused (1) exercised control, management, or care over the substance; and (2) knew the matter possessed was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006); TEX.HEALTH & SAFETY CODE ANN. §§ 481.121(a), (b)(5), 481.002. Texas law provides that "[a] person acts knowingly, or with knowledge, with respect . . . to circumstances surrounding his conduct when he is aware . . . that the circumstances exist." TEX.PENAL CODE ANN. § 6.03(b). "A

18

person acts intentionally, or with intent, with respect . . . to a result of his conduct when it is his conscious objective or desire to . . . cause the result." *Id.* § 6.03(a).

While mere presence is insufficient to establish possession when the contraband is not in the exclusive possession of the defendant, a factfinder may nonetheless infer that the defendant knowingly or intentionally possessed the contraband if sufficient independent facts and circumstances justify such an inference. *See Tate v. State*, 500 S.W.3d 410, 413-14 (Tex.Crim.App. 2016). In *Evans v. State*, the Court of Criminal Appeals recognized a non-exhaustive list of factors that may indicate a link connecting the defendant to the knowing possession of contraband. *Evans*, 202 S.W.3d at 162 n.12. The factors relevant to Appellant's case include: (1) the defendant's presence when the search was conducted; (2) whether the defendant owned or had a right to possess the place where the drugs were found; (3) whether the place where the drugs were found was enclosed; and (4) whether the conduct of the defendant indicated a consciousness of guilt. *Id.* The Court of Criminal Appeals indicated that, although these factors may guide a court's analysis, the ultimate inquiry is still a *Jackson* analysis. *See Tate*, 500 S.W.3d at 413-14.

**B. Analysis**

Viewing the evidence in the light most favorable to the verdict, a rational juror could have found Appellant guilty of possession of more than 50 pounds of marijuana beyond a reasonable doubt, based upon the cumulative force of all of the evidence and the reasonable inferences that could be drawn therefrom. *See Tate*, 500 S.W.3d at 417. The record shows that Appellant exercised control over the marijuana. *See Evans*, 202 S.W.3d at 161. He was the registered owner of the Jeep where the drugs were found, and he was driving the Jeep at the time the drugs were found. Appellant told law enforcement when they pulled him over--at the time when 82 pounds

19

of fresh marijuana were concealed within the Jeep--that the Jeep was his. *See Tate*, 500 S.W.3d at 416 (concluding that ownership of vehicle was relevant in a sufficiency analysis for a conviction for possession of a controlled substance where a syringe of methamphetamine was found in plain view).

A rational juror could have inferred that the untruthful statements Appellant provided to law enforcement during the traffic stop indicated consciousness of guilt. *See Padilla v. State*, 326 S.W.3d 195, 200-201 (Tex.Crim.App. 2010) (determining that a rational juror could have considered defendant's untruthful statements to law enforcement, in connection with other circumstances of the case, as affirmative evidence of appellant's guilt of capital murder). Appellant told Deputy Calanche that he lost his Tennessee driver's license several days prior. He stated that he had not yet obtained a replacement, because he moved to El Paso a month ago, but that he would do so soon. Appellant also repeatedly stated that his wife lived in El Paso. These statements were all untrue, as Appellant and his wife lived in Mexico, and they had never lived in El Paso.

A rational jury could also infer that Appellant's attempt to conceal information concerning the nature of his relationship with Devora and how he came to own the Jeep were probative of wrongful conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex.Crim.App. 2004). Deputy Calanche's body cam video demonstrated that Appellant mumbled his speech when Deputy Calanche asked if he had anything illegal in his Jeep. Appellant stuttered when he provided the false address in El Paso. Appellant initially told Deputy Calanche that he knew Devora for many years, and Devora stated that he knew Appellant for two months. Appellant giggled when Deputy Calanche questioned Appellant about this discrepancy, and Appellant mumbled his speech again after he gave law enforcement permission to search the vehicle.

20

Appellant and his wife testified that Appellant was picked up on more than one occasion by a man in Mexico they know only as "Adrian," who drove Appellant to a warehouse in Juarez where the Jeep was housed. Appellant testified that he drove the Jeep from Mexico to a specified location in the United States on his own volition, where he stated that he picked up Devora and received further instructions. Appellant testified that he knew that the Jeep was registered in his name to a false address in the United States, and Appellant admitted that he provided this false address to law enforcement. Sergeant Soto testified that only a knowing drug mule would drive Appellant's Jeep, because it contained such heavily concealed drugs. He indicated that the driver of the Jeep would know that a large portion of the gas tank was occupied by 57 packaged marijuana bricks.

Finally, Appellant's story at trial differed from that told to law enforcement at the time of his arrest. These inconsistent statements can be viewed as circumstances of guilt. *See Guevara*, 152 S.W.3d at 50. Detective Perales asked Appellant for his side of the story at the time when he was arrested, and Appellant did not provide Detective Perales with any of the details he explained in his trial testimony. Appellant told Deputy Calanche that he "bought [the Jeep] the first week of August." At trial, he stated that he did not buy the Jeep, but that Devora gave him the vehicle on the Zaragoza bridge.

One logical inference that a rational juror could draw from Appellant's untruthful statements to law enforcement was his knowledge of the contraband. While Appellant may have provided an alternative hypothesis at trial to explain the marijuana, the jury by its verdict rejected that alternate view of the facts. *See Evans*, 202 S.W.3d at 165. "Although the parties may disagree about the logical inferences that flow from undisputed facts, '[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Evans*,

21

202 S.W.3d at 163, *quoting Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). We must give the jury findings in *Jackson* deference. *See Evans*, 202 S.W.3d at 164 (noting that, "under federal and Texas law, juries trump both trial and appellate judges on weight-of-evidence determinations").

Viewing the evidence in the light most favorable to the verdict, a rational juror could have concluded that the reasonable inferences from the combined pieces of circumstantial evidence, along with the direct evidence of 82 pounds of fresh marijuana concealed within a Jeep that Appellant owned and was driving, was sufficient to establish beyond a reasonable doubt that Appellant possessed more than 50 but less than 2,000 pounds of marijuana. As such, we overrule the Issue Six.

## VI. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM

In his final three issues, Appellant argues that he was denied the right to effective assistance of trial counsel under the Sixth Amendment to the United States Constitution. *See* U.S. CONST. amend. VI. Specifically, he maintains that trial counsel's performance was constitutionally deficient because counsel did not (1) object to testimony about drug trafficking (issue seven), (2) strike a juror who expressed a bias in favor of law enforcement (issue eight), and (3) object to alleged hearsay statements made by Devora (issue nine). The State responds that the issues are without merit because Appellant did not develop the necessary record in support of his contentions and Appellant is not able to show that but for trial counsel's complained of errors, there is a reasonable probability that the outcome of his trial would have been different. We also conclude that the issues do not warrant relief.

22

### A. Controlling Law

We review ineffective assistance of counsel claims under the *Strickland v. Washington* standard. *See Nava v. State*, 415 S.W.3d 289, 307 (Tex.Crim.App. 2015), *citing Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under this standard, a defendant must show that trial counsel's performance was deficient, and the deficient performance prejudiced the defense. *See id.*, *citing Strickland*, 466 U.S. at 687. "An attorney's performance is deficient if it is not within the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms[.]" *Id.*, *citing Strickland*, 466 U.S. at 689 (noting that the defendant must overcome the presumption that the challenged action might be considered sound trial strategy). To show prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994) (en banc). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The defendant bears the burden of proving that trial counsel was ineffective. *See id.* at 689; *Jackson*, 877 S.W.2d at 771. "Under normal circumstances, the record on direct appeal will not be sufficient to show that trial counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002). If trial counsel has not been afforded the opportunity to explain the reason for his conduct, a reviewing court will not conclude that he performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Nava*, 415 S.W.3d at 307, *quoting Menefield v. State*, 363 S.W.3d 591, 593 (Tex.Crim.App. 2012).

## B. Objecting to Testimony

Appellant alleges in his seventh and ninth issues that trial counsel provided constitutionally deficient representation because counsel did not object to testimony. In issue seven, Appellant generally refers to Sergeant Soto's drug trafficking testimony and he complains about the officer's use of the terms "over one hundred pounds" and "demand cities." Appellant also complains that counsel failed to object to references to $56,000.00 dollars as the value of the drugs. We assume Appellant alleges that trial counsel's performance was deficient for not objecting to witness testimony and to the prosecutor's closing argument.

In his ninth issue, without a citation to the record or discussion of any portion of specific testimony, Appellant alleges that the "entire trial record is replete with references to statements made by Appellant's passenger, Eduardo Vasquez Devora." He also indicates that counsel should have objected to Devora's statements to Deputy Calanche, Detective Perales, and statements "captured on scene at the traffic stop." Appellant does not discuss any specific statement that Devora provided to any witness or explain how the admission of any statement harmed Appellant's defense.

None of these claims warrant relief. On this cold record, Appellant did not demonstrate that no reasonable trial strategy could justify trial counsel's acts or omissions. *See Lopez v. State*, 343 S.W.3d 137, 143-44 (Tex.Crim.App. 2011). The Court of Criminal Appeals held in *Lopez* that an accused did not meet his burden on the first prong of *Strickland* when the record was silent as to why trial counsel did not object to the testimony of two "additional" outcry witnesses, both of which constituted inadmissible hearsay and improper bolstering. *See id.* at 140, 143-44 (noting that trial counsel's deficient performance must be affirmatively demonstrated in the record). As in *Lopez*, Appellant has not rebutted the strong presumption that trial counsel's performance fell

24

within the wide range of reasonably professional assistance. *See id.* at 142. For instance, on this record we could not discount that trial counsel let this testimony come in as an aide to his theme that the cartel was the true villain in this case.

## C. Striking a Juror

In his eighth issue, Appellant argues that he received ineffective assistance of trial counsel because while the case turned on law enforcement testimony, trial counsel did not strike a juror who received law enforcement testimony "without any filter whatever."

### 1. Voir dire proceedings

During voir dire, the following exchange occurred:

[Trial Counsel]: [Venire member 31] here, my friend, my family member, he's been a police officer all his life and he made a comment. Police officers never lie. Is that true [Venire member 31]?

[Venire member 31]: I believe so.

[Trial Counsel]: And under oath?

[Venire member 31]: I'm sorry, sir?

[Trial Counsel]: Even under oath.

[Venire member 31]: Even under oath.

[Trial Counsel]: Okay. So everything the police officer says you would believe one hundred percent?

[Venire member 31]: Under oath, yes.

[Trial Counsel]: Okay. And so, therefore, you wouldn't be able to challenge him because you'd automatically say no, he's right.

[Venire member 31]: If an officer says something under oath, I would believe everything he said because of the penalty of law that he would be found guilty of perjury that's the end of his career.

[Trial Counsel]: But that applies to every witness, doesn't it, [Venire member 31]?

25

[Venire member 31]: Every witness?

[Trial counsel]: Yes.

[Venire member 31]: They should, but an officer is held at a higher standard.

[Trial Counsel]: All right. Does anybody feel that way too, that officers would never lie under oath? No. 41, No. 99, No. 90, No. 97, No. 33, No. 38, No. 74, No. 47, No. 29, No. 31. You're entitled to feel the way you feel and that's why we're here. . . . But if you've already made your mind about something like the police officer whatever he says is true, then you have to say, well, I'll disqualify myself.

The trial court later asked if either party had an issue with venire member 31, and the State indicated that the venire member's answer to whether she believed law enforcement officers lie under oath needed to be followed up. The State indicated, "I don't think that question was asked appropriately or correctly." The trial court stated that it did not have notes concerning venire member 31, so it granted permission to question the venire member individually.

When venire member 31 was questioned individually, the following exchange occurred:

[The State]: Your Honor, are we sure it's the State and not the defense? I don't have a notation on her.

[Trial Court]: I didn't have anything on her either.

[Trial Counsel]: I don't either, Judge.

[The State]: I didn't have a notation on her. I don't know if she has an excuse.

[The Court]: Ms. Tellez, did you have an excuse for me to consider?

[Venire member 31]: No.

[The Court]: I might have mixed you up with another juror.

[Venire member 31]: No, I did not.
. . .
[The Court]: Okay. I'm sorry about that. You can go ahead and step out.

[Venire member 31]: All right. Thank you.

26

Venire member 31 was thereafter excused from the courtroom and was subsequently seated as a juror at trial.

### 2. Application

Appellant does not allege a viable ineffective assistance of trial counsel claim on his eighth issue, because he does not demonstrate that there is a reasonable probability that the result of the proceeding would have been different absent counsel's performance. *See Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999) (indicating that the failure to make the required showing of either *Strickland* prong defeats the ineffectiveness claim); *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex.Crim.App. 2000) (en banc) (overruling ineffective assistance of counsel claim and noting that appellant did not allege a reasonable probability that the outcome of his trial would have been different on four portions of the claim). Many cases do come down to a peace officer's word against the word of the accused. Sometimes there are sharp differences between the story painted by the police and that by the defendant. In those circumstances, credibility is everything. And while we do not say this case had none of those elements, most of the testimony of the police officers was unchallenged. Instead, the case turned on the inferences to be drawn from the various statements and events testified to. For that reason, Appellant has failed to make the necessary showing under the prejudice element of *Strickland* on the record before us.[7]

We overrule the Issues Seven, Eight, and Nine.

---

[7] As for the first prong, we note that the Texas Court of Criminal Appeals has twice held that a defendant failed to overcome the presumption of reasonable conduct when trial counsel chose to not strike a venire member who had a clearly expressed bias. *See Delrio v. State*, 840 S.W.2d 443, 446-47 (Tex.Crim.App. 1992) (failure to strike former police officer who knew defendant); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994) (en banc) (failing to strike crime victim in case with similar crime). In *Delrio*, the court notes that "[w]hile counsel's failure to remove Martinez seems less than a fullfledged trial 'strategy,' it appears at least to have been the product of a deliberate choice. Any ineffectiveness on his part does not appear, therefore, to have stemmed from ignorance or neglect." *Delrio*, 840 S.W.2d at 445. While the record here might suggest otherwise, we find it unnecessary to reach the merits of that question.

## VII. CONCLUSION

Having overruled all of Appellant's issues on appeal, we affirm the trial court's judgment adjudicating guilt.

JEFF ALLEY, Chief Justice

August 12, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.